PFS DISTRIBUTION COMPANY and Pilgrim's Pride Corporation of Delaware, Inc., Plaintiffs,

v.

Darrell **RADUECHEL**, Barry Spain and D & B Solutions, Inc., Richard R. Donohue Theobald, Donohue & Thompson, P.C., Midwestone Bank & Trust, Stephen P. Hicks, and John Pothoven Defendants.

No. CIV. 4–04–CV–10329.

United States District Court, S.D. Iowa, Central Division.

Sept. 20, 2005.

PFS Distribution Company and Pilgrim's Pride Corporation of Delaware, Inc., William Lynch Schaller, John M.

Murphy, Ethan A. Berghoff, Baker & McKenzie LLP, Chicago, IL, Michael W. Thrall, Nyemaster, Goode, West, Hansell & O'Brien, P.C., Des Moines, for Plaintiffs.

Darrell Raduechel, Barry Spain and D & B Solutions, Inc., Gordon Fischer, Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for Defendants.

MidwestOne Bank & Trust, Steven P. Hicks and John Pothoven, Mark D. Walz, Stanley J. Thompson, Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for Defendants.

Richard R. Donohue, Megan M. Antenucci, David L. Phipps, Whitfield & Eddy, P.L.C., Des Moines, for Defendants.

Theobald, Donohue & Thompson, P.C., Glenn L. Smith, Kami M. Lang, Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, for Defendants.

## ORDER

LONGSTAFF, Chief Judge.

THE COURT HAS BEFORE IT defendants' motion for summary judgment, filed March 15, 2005. On April 8, 2005, plaintiffs filed a Rule 56(f) motion seeking additional discovery, which plaintiffs claimed was necessary to resist the motion for summary judgment. On April 15, 2005, defendants responded by denying that additional discovery was required. Plaintiffs submitted a reply brief on the Rule 56(f) issue on May 13, 2005. Magistrate Judge Walters ruled on the Rule 56(f) motion on May 26, 2005 allowing plaintiffs limited discovery and ordering plaintiffs to resist the summary judgment motion. On June 6, 2005, plaintiffs appealed the Magistrate Judge's decision. Plaintiffs resisted the motion for summary judgment on July 8, 2005. Defendants filed a reply on July 29, 2005. On August 19, 2005, plaintiffs filed a motion to strike portions of defendants' summary judgment reply pleadings or in the alternative, a motion for other appropriate relief. The motions are now considered fully submitted.

## I. BACKGROUND

The following facts are either not in dispute or are viewed in the light most favorable to the nonmoving party, PFS Distribution Company ("PFS").[1] The underlying events surrounding this litigation relate to a plot by Darrell Raduechel ("Raduechel") and Barry Spain ("Spain"), both former employees of PFS, to create a competing company ("D & B Solutions") by usurping PFS customers, distributors, employees, and apparently, financial information. The motions at issue here center on the financing of Raduechel and Spain's enterprise.

Raduechel and Spain obtained the necessary financing for D & B Solutions from MidWestOne Bank located in Oskaloosa, Iowa. Defendant John Pothoven ("Pothoven") is the president of MidWestOne and defendant Steven Hicks ("Hicks") is the Executive Vice President. After several meetings, and after Raduechel and Spain presented a business plan, the Bank agreed to finance D & B Solutions. In addition to providing the financing for D & B Solutions, the Bank also maintained a sweep account[2] for PFS and its predecessor, ConAgra, Inc.

---

1. Although most of the general facts surrounding this case were articulated in the preliminary injunction order against defendants Darrell Raduechel, Barry Spain, and D & B Solutions, the defendants involved in the motions currently pending before the Court, MidWestOne Bank & Trust, Steven Hicks, and

John Pothoven (collectively, the "Bank"), were not parties to the case at the time that order was granted. Thus, any factual statements made in that order relating to their actions were speculative.

2. Although neither of the parties define the term "sweep account" in their briefs, they do

In their complaint, PFS alleges that the Bank should be held liable for the losses PFS sustained when Raduechel and Spain created D & B Solutions. Specifically, PFS alleges that the Bank is liable under two theories: (1) what PFS terms the "secondary liability claims"—those claims relating to the Bank's involvement in Raduechel's and Spain's breach of their fiduciary duties, including conspiracy, aiding and abetting, and unjust enrichment; and (2) the misappropriation of trade secret claims. Under both theories, the Bank's liability centers around the Bank's knowledge of Raduechel's and Spain's actions with respect to PFS. As discussed below, the Bank claims that it was unaware Raduechel and Spain were acting illegally in setting up D & B Solutions. PFS, on the other hand, alleges that the Bank knew of Raduechel's and Spain's actions and encouraged them to breach their fiduciary duties and misappropriate PFS trade secrets.

The relationship between Raduechel, Spain, and the Bank began when Spain met with Pothoven to discuss the requirements for obtaining a loan for D & B Solutions. Pl.App. at 14. Pothoven informed them that the Bank would need a business plan and financial projections as part of the loan application process. Def. App. at 16–17. Pothoven also recommended an accountant, Richard Donohue of Theobald, Donohue & Thompson, P.C., to assist them. Def.App. at 27. Defendant Hicks joined the meeting approximately five minutes after it had begun. Pl.App. at 49. It is unclear from the rec-

ord whether Hicks was present when Pothoven recommended Donohue, but the Court does not find this fact to be material.

After this initial meeting with the Bank, Raduechel and Spain met with Donohue on January 27, 2004 to discuss how they should create a business plan. Pl.App. at 61, Def.App. at 27.[3] Donohue explained that the business plan would need to include information such as sales dollars, costs of sales, expenses, and general accounting expenses. Def.App. at 28. In his deposition, Raduechel stated that he with Spain based their financial projections on the actual data of PFS Oskaloosa. Pl.App. at 46. In order to obtain PFS Oskaloosa's financial data, Spain installed a computer program on Raduechel's work computer that compiled the data D & B Solutions needed for its business plan. Pl.App. at 46.

After downloading PFS Oskaloosa data, Raduechel and Spain prepared a draft business plan for D & B Solutions. Pl. App. at 73. After this draft plan was created, Raduechel and Spain met with Donohue to review the plan. Pl.App. at 73. On February 20, 2004, Raduechel, Spain, and Donohue returned for a second meeting with the Bank to discuss the financing of D & B Solutions. Pl.App. at 74, 98. Next, Donohue had a fifteen minute phone meeting with Hicks on February 26, 2004. Pl.App. at 89, 95, 98. On February 27, 2004, Raduechel and Spain, without Donohue, met again with the Bank, at

---

indicate that all PFS Oskaloosa customer payments went into this account. It appears that a "sweep account" is an account which requires "that a bank invest all the excess available funds at the close of each business day for the firm." *http://biz.yahoo.com/f/g/ss.html.*

**3.** There is some debate over when Raduechel and Spain first met with the bank to discuss

their plans for D & B Solutions. Because Donohue's records reflect a meeting on January 27, 2004, Pl.App. at 61, and the parties concede that Pothoven referred Raduechel and Spain to Donohue at their first meeting with the Bank, the Court concludes that the first meeting with the Bank occurred before January 27, 2004.

which time they presented a business plan and Excel spreadsheets. Def.App. at 7.+

Following the completion of the loan application process, in May of 2004, the Bank decided to finance D & B Solutions. MidWest*One* provided three types of credit to D & B Solutions: (1) a revolving line of credit for $400,000, (2) a $40,000 note to fund the purchase of equipment, fixtures, and furniture, and (3) a $155,000 line of credit. Def.App. at 34.

## II. FACTS IN DISPUTE

Although in a motion for summary judgment, the Court normally discusses only those facts which favor the nonmoving party, in this case the parties dispute virtually all the material facts relating to the Bank's knowledge of Raduechel's and Spain's actions. Consequently, to address only the facts that favor PFS would give a one-sided view of the factual and legal issues in this case and prevent full discussion of the issues presented in the Bank's motion. Therefore, the Court will lay out the facts presented by both parties, keeping in mind that the facts must be viewed in PFS' favor for the purpose of summary judgment.

The Bank claims that the only information it ever received from Raduechel and Spain was an Excel spreadsheet.[4] Def. Stmt. of Undisputed Material Facts at 2. According to Hicks's deposition, the emailed spreadsheets were the only financial information provided by Raduechel and Spain, who told Hicks the numbers were based on their "experiences" at PFS. Def.App. at 5. The Bank also contends that this spreadsheet did not contain any PFS confidential information or any indication that the numbers came from PFS data.

The Bank also references the Power Point Presentation of the Business Plan for Professional Food Service as evidence that they were never given actual PFS numbers by Raduechel and Spain. Def. Stmt. of Undisputed Material Facts at 3.

Contrary to the Bank's assertion, PFS claims that the Bank was given financial data on numerous occasions. Furthermore, PFS claims that the Bank knew that this financial data was created using actual data from PFS Oskaloosa. PFS cites several items in the record to support its assertion that the Bank knew Raduechel and Spain relied on actual PFS data:

♦ Donohue, Raduechel and Spain's accountant, is also a member of the Board of Directors of MidWest*One* Financial Group, Inc., the publicly traded holding company that is the sole shareholder of MidWest*One* Bank. Pl.App. at 56–58. He is also the Chairman of the Board's Audit Committee. Pl.App. at 60.

♦ Donohue spent more than 10 hours assisting Raduechel and Spain in preparing a draft of their business plan and reviewing financial projections. Pl.App. at 51, 72–72, 87, 98.

♦ Donohue knew, sometime before February 20, 2004, that Raduechel and Spain had based their data on ConAgra information (ConAgra was the predecessor company to PFS). Pl.App. at 78, 86.

♦ In his deposition, Raduechel stated that he showed the Bank a version of the business plan that explicitly stated that financial projections were based on PFS Oskaloosa actual numbers:

Q: And of course one of your business plans actually states that your

---

4. The briefs and depositions refer to both a "computer disk" and an "email" when referencing this spreadsheet. In his deposition, Hicks stated that either Raduechel or Spain emailed him the spreadsheet and then he saved it to a computer disk. Def.App. at 5. In any case, both references by Hicks are to the same Excel spreadsheet.

projections are based on the PFS Oskaloosa actual numbers; right?

A: Yes.

Q: Did you give that plan to MidWest*One* Bank?

A: We showed it to them.

Pl. App at 47.

♦ Hicks testified that on February 27, 2004, Raduechel and Spain provided him with the business plan and financial information. Pl.App. at 111–12, 119–20. Donohue testified, and a note from Raduechel to Donohue indicated, however, that around March 9, 2004 Raduechel and Spain provided Hicks with an updated version of the financial statement. Pl.App. at 84.

♦ The Bank's April 15, 2004 "Loan Presentation Summary Minutes of the Loan Officer Committee," referenced specific financial figures not contained in the Excel spreadsheets initially given to Hicks. Pl.App. at 181–82.

♦ The same "Loan Presentation Summary Minutes of the Loan Officer Committee" specifically reference customers, employees, and suppliers who are likely to make the move from PFS to D & B Solutions if the Bank were to finance D & B Solutions. Pl.App. 180–183.

## II. APPLICABLE LAW AND DISCUSSION

### A. Summary Judgment Standard

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir.1994). The moving party must establish its right to judgment with such clarity there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material .... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B. Misappropriation of a Trade Secret

■ PFS claims that the Bank is liable for misappropriation of a trade secret, specifically financial data relating to the PFS operations in Oskaloosa, Iowa, under the Iowa Uniform Trade Secrets Act. Iowa Code § 550.2 (Lexis 2005). In their motion for summary judgment, the Bank primarily puts forth four reasons why they are entitled to summary judgment on these claims: (1) they never received confidential PFS information; (2) the information they received was experience-based information; (3) if they did receive any confidential information, they did so innocently; and (4) they could have acquired the same information from internal bank documents, and therefore should not be held liable if Raduechel and Spain's information was illegally obtained. None of the Bank's arguments entitle it to summary judgment at this time.

Under the Uniform Trade Secrets Act, misappropriation is defined as any of the following:

a. Acquisition of a trade secret by a person who knows that the trade secret is acquired by improper means.

b. Disclosure or use of a trade secret by a person who uses improper means to acquire the trade secret.

c. Disclosure or use of a trade secret by a person who at the time of disclosure or use, knows that the trade secret is derived from or through a person who had utilized improper means to acquire the trade secret.

d. Disclosure or use of a trade secret by a person who at the time of disclosure or use knows that the trade secret is acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

e. Disclosure or use of a trade secret by a person who at the time of disclosure or use knows that the trade secret is derived from or through a person who owes a duty to maintain the trade secret's secrecy or limit its use.

f. Disclosure or use of a trade secret by a person who, before a material change in the person's position, knows that the information is a trade secret and that the trade secret has been acquired by accident or mistake.

Iowa Code § 550.2(3). "Trade secret" is defined as:

information, including but not limited to a formula, pattern, compilation, program, device, method, technique, or process that is both of the following:

a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by a person able to obtain economic value from its disclosure or use.

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Iowa Code § 550.2(4). Finally, under the Act, knowledge includes both actual knowledge and situations where the person "has reason to know of the information or circumstance." Iowa Code § 550.2(1). Accordingly, if the Bank knew, or had reason to know, that Raduechel and Spain had misappropriated a trade secret, it would be liable under the Act.

### 1. Whether the Bank Received Confidential PFS Information

■ In support of its motion for summary judgment, the Bank asserts that, "MidWest*One* at no time possessed any financial information prepared by PFS." Def. Summ. J. Br. at 9. In order to grant the Bank's motion for summary judgment, the Court must find that, when viewing the facts in the light most favorable to the nonmoving party, in this case, PFS, there were no material facts in dispute. Here, however, the parties dispute virtually all the facts critical to deciding the issues presented in the pleadings.

Relevant to the Bank's claim that it was never in possession of PFS financial information, the Bank claims that the business plan attached to the Complaint as Exhibit E, which stated that "sales dollars are based on actual sales of Professional Food Systems (PFS) over the last two years," was never given to a Bank employee. The Bank also argues that the data it received was rounded to the thousands and that there "was no indication that these figures were derived from any source other than Raduechel and Spain's experience." Def. Br. at 10.

PFS on the other hand, cites evidence, such as Raduechel's testimony that the Bank was shown Exhibit E and knew the numbers were taken directly from PFS sales figures. Pl.App. at 47. Furthermore, PFS spends substantial time highlighting the link between Donohue and the Bank and the fact that Donohue likely had knowledge of where the numbers originat-

ed.[5] PFS also points to the substantial evidence, including the testimony of Raduechel and Spain, that they downloaded PFS data to create their financial projections.

Viewing the evidence in the light most favorable to PFS, there are material facts in dispute as to whether the financial data provided to the Bank was based on actual PFS numbers and whether the Bank knew or reasonably should have known the source of the data.

### 2. Whether the Information Given to the Bank was Experience–Based Knowledge

Next, the Bank argues that the information presented to it was "intangible, experience-based knowledge." Def. Summ. J. Br. at 14. This argument must also fail. Again, for the purpose of summary judgment, the Court must view the facts in the light most favorable to PFS. Therefore, assuming that Raduechel and Spain generated their business plan based on the actual sales numbers, customer mix, number of customers, amount of sales per customers, prices charged per customer, gross profits from specific customers, etc., of PFS Oskaloosa, this goes beyond the type of generalized experience that a former employee may rely on in creating a business plan. A former employee may bring readily ascertainable information, based on their experience, with them when they leave one employer and move onto another (assuming no violation of a contract). *Vigoro Indus. v. Crisp*, 82 F.3d 785, 790 (8th Cir.1996) ("Although confidential and valuable customer information that would be costly and time consuming to duplicate qualifies for trade secret protection, readily ascertainable customer information does not."). Raduechel and

Spain, however, downloaded specific information regarding each customer and distributor at PFS. The information Raduechel and Spain provided to the Bank crosses the line from "readily ascertainable" to "confidential and valuable customer information." Thus, this was not the type of information that the Bank could permissibly rely upon under the statute.

### 3. Whether the Bank Defendants Innocently Used PFS Data

The Bank also argues that if the information provided by Raduechel and Spain constituted a trade secret, the Bank had no knowledge that the information was proprietary. To support this argument, the Bank again stated that it did not know any information it possessed was derived from actual PFS data. As was stated earlier, there is a material dispute of fact regarding whether the Bank knew the source of this data. Furthermore, even assuming the Bank did not have actual knowledge of where Raduechel and Spain obtained their information, the statute holds individuals and entities accountable for situations where the person "has reason to know of the information or circumstance." Iowa Code § 550.2(2). In his deposition, Raduechel testified that the Bank was shown a copy of the business plan that stated, "sales dollars are based on actual sales of Professional Food Systems (PFS) over the last two years." Pl. App. at 47; Exh. E. Viewing the evidence in the light most favorable to PFS, this Court cannot conclude that the Bank had no reason to know that the information came from actual PFS data.

### 4. Whether the Bank Could Have Relied on Internal Bank Documents

Finally, the Bank also argues that because they maintained a sweep account for

---

**5.** Because Donohue is not a party to this motion, the Court makes no judgment as to whether Donohue did or did not know the origin of Raduechel's and Spain's financial data.

PFS, they were in a unique position to acquire the data given to them by Raduechel and Spain without using any illegal means to do so. Essentially, the Bank argues that if they had looked at the deposits made into the PFS sweep account, and coupled that information with other, publicly available information about PFS, they would have been able to generate the same data Raduechel and Spain obtained from the PFS computers. The Bank did not go to the trouble of compiling all of this data; they relied on the information presented by Raduechel and Spain. They argue, however, that because they *could* have compiled it legally, there is no trade secret violation.

PFS argues that the information in the sweep account combined with the public information regarding the Pilgrim's Pride Corporation (PFS' parent corporation) would not provide the type of detailed financial data provided by Raduechel and Spain. As Hicks admitted in his deposition, there would have been no way for the Bank to determine the exact mix of business at PFS Oskaloosa, the number of customers, the amount of sales per customer, the prices charged to the customers, or the gross profits from specific customers. Pl.App. at 156–57. The SEC filings for Pilgrim's Pride and ConAgra Foods did not contain specific break-outs for PFS Oskaloosa, so such filings would be of limited value in helping the bank determine whether to lend money to D & B Solutions. Pl.App. at 145–46. While the Bank may have had more information than someone limited to publicly available information, it would still be limited to making general conclusions about PFS Oskaloosa and its customers. Pl.App. at 157. Thus, it is unlikely that the Bank would have been able to compile the necessary financial information without the data provided by Raduechel and Spain.

PFS also raises questions regarding (1) the propriety of the Bank using confidential PFS data maintained by the Bank, and (2) whether the Bank can avoid liability for a trade secret violation based on the fact that it *could* have obtained information without violating trade secret laws when it did not in fact do so. Because the Court finds that there are material questions regarding whether the Bank could have obtained the essential financial data without Raduechel and Spain, these issues are not addressed at this time.

C. *Liability for Conspiracy, Aiding and Abetting, and Unjust Enrichment Stemming from Raduechel's and Spain's Breach of Fiduciary Duty*

 Wholly separate from any trade secret violations, PFS also seeks recovery from the Bank under conspiracy, aiding and abetting, and unjust enrichment theories, for the allegedly unlawful acts of Raduechel and Spain. Specifically, PFS alleges that the Bank engaged in a civil conspiracy with Raduechel and Spain not only to misappropriate trade secrets, but also to "induce[ ] Raduechel and Spain to breach their fiduciary duties by agreeing to provide and providing the financing for D & B Solutions." Second Am. Compl. at 29. PFS further alleges that the Bank was unjustly enriched by their actions. Second Am. Compl. at 29–30. And finally, PFS claims that the Bank aided and abetted Raduechel and Spain in breaching their fiduciary duties owed to PFS. Second Am. Compl. at 33–34.

For the most part, the same material disputes of fact that prohibit a grant of summary judgment with respect to the claims of misappropriation of trade secrets also prohibit such a finding on the fiduciary duty claims. Although the legal concepts defining the two types of claims are

distinct, the question of what the Bank knew about Raduechel's and Spain's actions is critical to both types of claims. Accordingly, based on the record before the Court at this time, and viewing the record in the light most favorable to PFS, material disputes of fact exist as to whether the Bank was involved in Raduechel's and Spain's breach of fiduciary duties.

Despite the distinct type of claim (i.e., fiduciary duty versus trade secret), the Bank begins the argument section of its brief in support of summary judgment by stating, "[t]he Bank's liability on each count turns on the issue of whether the Bank 'misappropriated' a 'trade secret' because the conspiracy, constructive trust and unjust enrichment, and aiding and abetting counts each require proof of an *independent* tort." Def. Summ. J. Br. at 6 (emphasis in original).

After the Bank filed its motion for summary judgment, PFS filed a Rule 56(f) motion seeking additional discovery before it responded to the motion for summary judgment. Essentially, PFS used the Rule 56(f) motion as an opportunity to argue that the summary judgment motion only focused on the question of whether there had been a trade secret violation. Tr. of Rule 56(f) Hr'g at 5. Consequently, PFS argued, if the Court were to grant the motion for summary judgment, there would still be claims remaining; specifically, those claims relating to the breach of fiduciary duties. *Id.* Magistrate Judge Walters granted only a portion of the discovery requested by PFS at that point finding that they could respond to the pending summary judgment motion without additional discovery.

PFS then responded to the motion for summary judgment, focusing, as the Bank did in its initial motion, on question of misappropriation of trade secrets. PFS did take the time, however, to highlight the fact that the Bank had not addressed its role in Raduechel's and Spain's breach of fiduciary duty—the other basis for liability under the complaint. Pl. Resistance Br. at 5-6. Subsequently, in its reply memo, the Bank, for the first time, addressed its liability relating to the breach of fiduciary duty claims. Def. Reply Br. for Summ. J. at 5-6. In response, PFS filed a "Motion to Strike Certain Portions of the Bank Defendants' Summary Judgment Reply Pleadings, or in the Alternative for Other Appropriate Relief." In this motion, PFS argued that the Bank's arguments that it did not knowingly assist, participate or conspire in Raduechel's or Spain's breaches of duty should be stricken because they had not been included in the original motion, and were therefore waived.

█ Local Rule 56.1(a) requires a party moving for summary judgment to file a motion stating "each of the grounds for the motion." Because the Bank failed to set forth arguments on the claims relating to fiduciary duty in its initial motion for summary judgment, it cannot raise them in a reply brief. *See, e.g., United States v. Vincent,* 167 F.3d 428, 432 (8th Cir.1999) (arguments raised in for the first time in reply briefs need not be addressed). Accordingly, the Court need not delve into the specifics of the conspiracy and aiding and abetting claims at this time. PFS' motion to strike those arguments in the Bank's reply brief relating to liability for breach of fiduciary duty is granted. Def. Reply Br. at 2-8.

D. *PFS' Appeal of the Rule 56(f) Ruling*

Finally, PFS appeals the Magistrate Judge's ruling on its Rule 56(f) motion. Magistrate Judge Walters found that PFS was able to resist the motion for summary judgment without conducting additional

discovery (other than the deposition of Hicks). Because PFS has resisted the motion for summary judgment and this Court has denied summary judgment to the Bank, this case will proceed with discovery from this point forward. Therefore, this appeal is moot. Any additional discovery requests by PFS from this point onward can be handled in the normal course of the litigation.

## III. CONCLUSION

For the reasons stated above, the motion for summary judgment by the Bank Defendants is DENIED. The motion to strike certain portions of the Defendants' reply brief is GRANTED and those sections are hereby stricken. Finally, the appeal taken from Magistrate Judge Walter's Rule 56(f) ruling is DENIED as moot.